**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MALTBIE'S GARAGE**
**COMPANY, INC.,**

                                        **Plaintiff,**

        **vs.**

                                                        **1:21-CV-581**
                                                        **(MAD/TWD)**

**GENERAL MOTORS LLC,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**ARENT FOX LLP**                          **CHARLES GALLAER, ESQ.**
1301 Avenue of the Americas, Floor 42      **MICHAEL P MCMAHAN, ESQ.**
New York, New York 10019
Attorneys for Plaintiff

**SEYFARTH SHAW LLP**                      **EDDY SALCEDO, ESQ.**
620 8th Avenue, 32nd Floor
New York, New York 10018
Attorneys for Defendant

**SEYFARTH SHAW LLP**                      **JAMES C. MCGRATH, ESQ.**
World Trade Center East                    **CALEB SCHILLINGER, ESQ.**
Two Seaport Lane, Suite 300
Boston, Massachusetts 02110
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff, Maltbie's Garage Company, Inc., commenced this action on May 19, 2021, in Warren County Supreme Court against Defendant, General Motors, LLC, for violations of the New York Franchised Motor Vehicle Dealer Act (hereinafter "the Dealer Act"). Dkt. No. 2. On May 21, 2021, Defendant removed this action to the Northern District of New York. Dkt. No. 1. Defendant has moved to dismiss Plaintiff's Complaint. As set forth below, Defendant's motion to dismiss is granted-in part and denied-in-part.

## II. BACKGROUND

Plaintiff has been a Chevrolet dealer in upstate New York since 1946. Dkt. No. 2 at ¶ 3. In 2017, due to an error in paperwork and through no fault of Plaintiff's, its floorplan lender, Ally Financial, declared Plaintiff out of trust and suspended its floorplan line. *See id.* at ¶ 4. While the financial arrears were eventually resolved, Ally would not reinstate Plaintiff's floorplan. *See id.* Without a prime floorplan lender, Plaintiff was forced to turn elsewhere. *See id.* at ¶ 5. Plaintiff secured floorplan financial, first with NextGear Capital, and later with Westlake Financial (the "Westlake Floorplan"). Both were at usurious rates, well above those charged to most Chevrolet dealers. *See id.*

To secure the Westlake Floorplan, Plaintiff was forced to borrow money in a letter of credit from a local "hard" money lender, Anthony Ianniello, at high interest rates ("Ianniello LOC"). *See id.* at ¶ 6. Between the high rates charged under the Westlake Floorplan and the Ianniello LOC, Plaintiff was barely able to stay afloat. *See id.* at ¶ 7. When the COVID-19 pandemic struck, however, Plaintiff was unable to meet its financial obligations. *See id.* at ¶ 8. Plaintiff continued to sell cars in the face of high interest charges until November, at which point

2

the interest rates became too much to bear.  *See id.* at ¶ 9.  Unable to sustain the floorplan

financial model forced on it, Plaintiff transitioned to a cash-only model for purchasing new

vehicles.  *See id.*  Unsurprisingly, this new cash-only model has resulted in fewer new car sales.

*See id.*

According to the Complaint, Defendant has a wholly owned captive finance arm, GM

Financial, which could have provided Plaintiff with a floorplan lifeline if it chose to do so.  *See id.*

at ¶ 10.  The line would be fully secured by the vehicles themselves, thereby presenting little risk

for Defendant or GM Financial.  *See id.*  Plaintiff, however, alleges that Defendant is actually

looking for Plaintiff to go out of business so that it can given Plaintiff's franchise "to a preferred

dealer waiting in the wings."  *Id.* at ¶ 11.

Plaintiff and Defendant are parties to a Dealer Sales and Service Agreement and Standard

Provisions (the "Dealer Agreement") for Chevrolet, as amended effective November 1, 2020.  *See*

*id.* at ¶ 13.  A little over a month after amending the Dealer Agreement, Defendant issued a notice

of breach ("Breach Notice"), stating that because Plaintiff's floorplan had been suspended on

November 17, 2020, Plaintiff needed to have a floorplan reinstated or find alternative financing

within thirty days.  *See id.* at ¶ 14.

On January 22, 2021, Defendant issued a notice of termination ("Termination Notice"),

telling Plaintiff that it was terminating the franchise effective April 30, 2021, regardless of

whether Plaintiff could obtain alternative floorplan financing.  *See id.* at ¶ 15.  On March 29,

2021, given Defendant's refusal to help Plaintiff stay in business, Plaintiff signed an Asset Sale

Agreement to transfer the franchise and the assets to Adirondack Auto Group LLC, owned by

Janette Hammond, for goodwill valued at $1,450,000. *See id.* at ¶ 16. According to the
Complaint, Ms. Hammond is well-qualified to own and run a car dealership. *See id.* at ¶ 17.
Prior to entering the automotive retail industry, Ms. Hammond worked with dealerships
throughout the Capitol Region on developing marketing strategies, advertising plans, reputation
management, and social media development. *See id.* Ms. Hammond would go on to attend and
graduate from the National Automobile Dealer Association ("NADA") Dealer Academy, where
she distinguished herself among her peers. *See id.* at ¶ 18. While at the NADA Dealer Academy,
Ms. Hammond was recognized on multiple occasions for her outstanding writing and business
acumen. *See id.* at ¶ 20. Ms. Hammond accomplished all of this while working at Maltbie's and
helping it navigate through difficult times caused by unprecedented challenges to its business.
*See id.*

   Despite Ms. Hammond's qualifications and ability to own and operate a dealership like
Plaintiff's, Defendant did not consider her application, which Plaintiff claims is a violation of the
Dealer Agreement and the Dealer Act. *See id.* at ¶ 21. According to Plaintiff, under the Dealer
Agreement, if Plaintiff presents a proposed sale of the franchise, "General Motors will consider
Dealer's proposal and not unreasonably refuse to approve it." *Id.* at ¶ 22. Moreover, Plaintiff
claims that nothing in the breach provisions or termination provisions in the Dealer Agreement
obviates Defendant's obligation to consider a proposed sale in good faith. *See id.* Additionally,
Plaintiff argues that the Dealer Act prohibits a manufacturer from "unreasonably withhold[ing]
consent to the sale or transfer of an interest" in a dealership, and the manufacturer must provide
specific reasons in writing for its withholding of consent. *Id.* at ¶ 23 (quoting N.Y. Veh. & Traf.

L. § 463(2)(k)).  Plaintiff claims that nothing in the Dealer Act alters these requirements simply

because a termination notice has been issued.  *See id.*

Finally, the complaint alleges that, in violation of its contractual obligations to it,

Defendant has not dealt with Plaintiff in the manner required under the Dealer Agreement.  *See id.*

at ¶ 24.  The Dealer Agreement recognizes that Plaintiff "relies upon [General Motors] to provide

sales and service support and to continually strive to enhance the quality and competitiveness of

its products.  This mutual dependence requires a spirit of cooperation, trust and confidence

between General Motors and [Plaintiff]."  *Id.* at ¶ 25.  Plaintiff notes that New York law

recognizes an implied covenant of good faith and fair dealings in all contracts, and argues that

Defendant has violated this covenant by, among other things, refusing to provide Plaintiff with

floorplan financing needed to purchase vehicles from Defendant, and refusing to consider the

transfer of the franchise to a qualified candidate.  *See id.* at ¶¶ 26-27.

## III. DISCUSSION

### A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not

extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    Documents to be Considered**

When considering a motion to dismiss, "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by

reference." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* (quoting *Chambers*, 282 F.3d at 153).

Defendant presents the Court with, *inter alia*, four documents for the Court to review when assessing the Plaintiff's claims: the Standard Provisions of the Dealer Agreement, the Notice of Breach, the Notice of Termination, and a letter sent from Defendant to Plaintiff on April 8, 2021. *See* Dkt. Nos. 28-3, 28-4, 28-5, 28-6. While not attached to the Complaint, all of these documents are refenced in the Complaint. Dkt. No. 2 at ¶¶ 13-15. Further, the Complaint relies heavily on the effect of these documents, which renders them integral to the Complaint. *See Mangiafico*, 471 F.3d at 398.[1] Thus, the Court will consider these documents when examining Defendant's motion to dismiss.

**C.     Count One: Section 463(2)(d) of the Dealer Act**

In its first cause of action, Plaintiff alleges that Defendant violated Section 463(2)(d) of the Dealer Act by attempting to terminate its franchise without due cause. *See* Dkt. No. 2 at ¶¶ 97-109. Plaintiff claims that Defendant's reason for terminating its franchise is unreasonable given the following: "(1) we are still in a global pandemic and restrictions still exist on all businesses, making floorplan financing less attractive to third-party lenders; (2) GM's production is down, making floorplan financing less attractive to third-party lenders; (3) GM has a captive

---

[1] The Court notes that Plaintiff does not object to Defendant's reliance on these documents in support of its motion to dismiss.

finance arm that could provide the floorplan GM complains of, solving the problem and becoming a win-win for both parties." *Id.* at ¶ 102. Further, Plaintiff contends that, given the above factors, Defendant did not provide Plaintiff with a reasonable amount of time to cure the purported default. *See id.* at ¶ 103.

In its motion to dismiss, Defendant contends that Plaintiff's failure to maintain floorplan financing was a material breach and that Plaintiff's failure to cure the breach in the time allotted permitted Defendant to terminate the franchise. *See* Dkt. No. 28-1 at 12-16. Defendant further argues that the reasonableness of its actions is further demonstrated by the fact that Plaintiff admits that this was the third time in four years that Plaintiff lost its floorplan financing with three different lenders. *See id.* In response, Plaintiff contends that it is Defendant's burden of proof to demonstrate that Plaintiff materially breached the Dealer Agreement, that the floorplan financing requirement was reasonable and necessary, and that Defendant gave Plaintiff reasonable time to cure the breach, which cannot be decided as a matter of law.

The Dealer Act provides that "[i]t shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract ... [t]o terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise." N.Y. Veh. & Traf. Law § 463(2)(d)(1). A notice of termination must be issued with due cause and in good faith. *Id*. § 463(2)(e)(2). To establish due cause, the franchisor must prove "a material breach by a new motor vehicle dealer of a reasonable and necessary provision of a franchise [and that] the breach [was] not cured within a reasonable time after written notice of the breach ha[d] been received from the manufacturer or distributor." *Id*.

The Standard Provisions of the Dealer Agreement provides that the "Dealer agrees to have and maintain a separate line of credit from a creditworthy financial institution reasonably acceptable to General Motors and available to finance the Dealer's purchase of new vehicles in conformance with the policies and procedures established by General Motors." Dkt. No. 28-4 at 13. The Dealer Agreement further states that the "[f]ailure of Dealer to maintain the line of credit required" is an "act[] or event[] ... within the control of the Dealer" and that it constitutes a "material breach[] of this Agreement." *Id*. at 18-19.

Plaintiff's Complaint alleges that Defendant issued a notice of breach in December 2020 and a notice of termination on January 22, 2021 because Plaintiff failed to secure floorplan financing. Dkt. No. 2 at ¶¶ 14-15. Plaintiff affirmatively admits that it lost its floorplan financing and had done so at least twice more before Defendant issued a notice of breach. *Id*. at ¶¶ 3-4, 9. Plaintiff's Complaint demonstrates that it materially breached the contract at least three times by the terms of the Dealer Agreement. Plaintiff's Complaint, however, claims that Defendant lacked due cause because enforcement of the agreement was unreasonable due to the COVID-19 pandemic, Defendant's decrease in production, and because Defendant "has a captive finance arm that could provide the floorplan GM complains of, solving the problem and becoming a win-win for both parties." *Id*. at ¶ 102. In essence, Plaintiff claims that these circumstances made the floorplan financing provision unreasonable and, therefore, the termination notice was not issued with due cause and in good faith. *See id*. at ¶¶ 100-03.

Defendant focuses on the terms of the Dealer Agreement to demonstrate that they have not violated the Dealer Act. *See* Dkt. No. 28-1. However, the Dealer Act is clear, its review is

without regards to the of the terms of the franchise.  N.Y. Veh. & Traf. Law § 463(2)(d)(1).  To deny further review of Plaintiff's Complaint would directly contradict the purpose of the Dealer Act, which was to address "[t]he imbalance placed dealers at the mercy of manufacturers who were able to draft and impose protectionist agreements favorable to manufacturers, placing at risk a dealer's financial investment." *Beck Chevrolet Co. v. Gen. Motors LLC*, 27 N.Y.3d 379, 393 (2016).  Thus, at this stage, the Dealer Agreement is not determinative as to whether termination was done with due cause.  *See id*.

Further, the Dealer Act requires that the dealer be given a reasonable time to cure the breach.  N.Y. Veh. & Traf. Law § 463(e)(3).  Plaintiff's Complaint claims that Defendant "did not provide [Plaintiff] with a reasonable amount of time to cure the purported default."  Dkt. No. 2 at ¶ 103.  Plaintiff's Complaint states that Plaintiff was given thirty days to cure the breach.  *Id.* at ¶ 14.  Defendant does not assert or establish that under New York law, thirty days to cure a loss of floorplan financing is *per se* a reasonable amount of time.  *See* Dkt. No. 28-2 at 10-12.  The reasonableness would therefore be a fact intensive question.[2]  Therefore, even if the Court were to accept that Plaintiff's conduct demonstrated a material breach and that a termination may have been warranted, Plaintiff's Complaint sufficiently claims that it was not given a reasonable time after the written notice to cure the breach as required by Section 463(e)(3) of the Dealer Act.

---

[2] The Court notes that the Dealer Agreement stipulates that Plaintiff would only be given thirty days to respond to Defendant's Notice of Breach to "demonstrate that the breach has been corrected, or explain the circumstances to General Motors' satisfaction."  Dkt. No. 28-4 at 18-19.  Plaintiff's Complaint claims that the thirty-day period was not a reasonable amount of time.  *See* Dkt. No. 2 at ¶¶ 14, 103.  The Dealer Agreement also does not state that the parties agree that the thirty-day period is a reasonable period to cure any breach or that Plaintiff only has thirty days to cure.  Dkt. No. 28-4 at 19.

Thus, Defendant's motion to dismiss Plaintiff's claims for violations of Section 463(2)(d)(1) of the Dealer Act is denied.[3]

**D.     Counts Two and Three: Sections 463(2)(k) and 466 of the Dealer Act**

In its second and third causes of action, Plaintiff contends that Defendant acted unreasonably, in violation of Sections 463(2)(k) and 466 of the Dealer Act, by not entertaining the proposed sale of the dealership to Ms. Hammond. *See* Dkt. No. 2 at ¶¶ 110-25. Defendant contends that these claims are subject to dismissal because courts have found that it is not unreasonable for a manufacturer to refuse to consider or approve a proposed transfer of a dealership already subject to a notice of termination. *See* Dkt. No. 28-1 at 17-19 (citations omitted).

The Dealer Act provides that, "[i]t shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract ... [t]o unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party by any franchised motor vehicle dealer or any partner or stockholder of any franchised motor vehicle dealer." N.Y. Veh. & Traf. Law § 463(a)(k). The Dealer Act further provides that "[i]t shall be deemed an unreasonable

---

[3] Plaintiff also asserts that Defendant should have waived any and all breaches by Plaintiff because of the COVID-19 pandemic. Dkt. No. 29 at 9-10. Plaintiff requests that the Court take judicial notice of the impact of the pandemic on the automobile industry. *Id*. at 9 n.2. Since Plaintiff relies on the impact of the COVID-19 pandemic in support of its claims, the Court finds that it may properly take judicial notice of the pandemic and the well-known impacts it had on the economy. *See V.M. Paolozzi Imports, Inc. v. Am. Honda Motor Co*., No. 7:12-CV-1052, 2015 WL 7776926, *2 n.1 (N.D.N.Y. Dec. 2, 2015) ("Plaintiffs urge the Court to take judicial notice of the 2008 financial crisis and the ensuing auto-industry downturn. To the extent that it is widely known that the U.S. economy experienced a recession beginning in the fall of 2008, the Court takes judicial notice of this fact because Plaintiffs rely on it in bringing this suit") (citing Fed. R. Evid. 201(2); *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc*., 742 F.3d 42, 44 n.1 (2d Cir. 2014)).

restriction upon the sale or transfer of a dealership for a franchisor (i) directly or indirectly to prevent or attempt to prevent a franchised motor vehicle dealer from obtaining the fair value of the franchise or the fair value of the dealership business as a going concern. ..."  N.Y. Veh. & Traf. Law § 466(2).

Previously, courts have held that "[i]t is not unreasonable to refuse to approve the transfer of a franchise that is in the process of being terminated."  *H-D Michigan, LLC v. Sovie's Cycle Shop, Inc*., 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009) (citations omitted).  Thus, a franchisor does not err in failing to consider a transfer request after the issuance of a notice of termination. *V.M. Paolozzi Imports, Inc. v. Am. Honda Motor Co*., No. 7:12-CV-1052, 2015 WL 7776926, *9 (N.D.N.Y. Dec. 2, 2015) (citing *H-D Michigan*, 626 F. Supp. 2d at 279) ("Moreover, Plaintiffs' contention in their response to Defendants' statement of material facts that the franchises did not terminate until August of 2010 is immaterial because, as the cases point out, the relevant date here is the notice of termination").

While Defendant's decision to withhold consent of Plaintiff's sale of its franchise to Ms. Hammond may have been reasonable because of the Notice of Termination that had been issued, the Court finds that it is unable to make this determination at the motion to dismiss stage. Defendant's reliance on the Notice of Termination as a basis to refuse to permit the sale necessarily requires the Court to determine whether the issuance of the Notice of Termination was itself reasonable and not in violation of the Dealer Act.  The Court of Appeals has made clear that the burden of proof is on the franchisor to demonstrate that the requirements in a franchise agreement are reasonable and necessary.  *See Beck Chevrolet Co., Inc.*, 27 N.Y.3d at 393-94.

12

Defendant relies on several cases that "it is not unreasonable to refuse a request to sell *after* a franchise is already subject to termination." *V.M. Paolozzi Imports, Inc.*, 2015 WL 7776926, at *8 (citing *H-D Michigan, LLC v. Sovie's Cycle Shop, Inc.*, 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009); *Ganley v. Mazda Motor of Am., Inc.*, 367 Fed. Appx. 616, 625-26 (6th Cir. 2010)).  Each of these cases, however, was decided at the summary judgment stage.

Further, the purpose of the automatic stay of Section 462(2)(k) is to review the manufacturer's denial of consent to the sale or transfer of the franchise.  N.Y. Veh. & Traf. Law § 463(2)(k) ("Upon receipt of notice and reasons for the franchisor's withholding of consent, the franchised motor vehicle dealer may within one hundred twenty days have a review of the manufacturer's decision as provided in section four hundred sixty-nine of this article").  Dismissal of a complaint at the motion to dismiss stage where Plaintiff alleges the notice of termination was issued without due cause would render the automatic stay superfluous and allow all manufactures to withhold consent and avoid any legal action by simply terminating the franchise at their discretion.

Considering the well-pled allegations in the Complaint in Plaintiff's favor, the Court finds that Defendant's motion to dismiss Plaintiff second and third causes of action must be denied.

E.     **Count Four: Breach of Contract Claim**

In its fourth cause of action, Plaintiff alleges that Defendant breached the Dealer Agreement when it refused to entertain the proposed transfer of the dealership to Ms. Hammond and when it refused to force GM Financial to provide it with floorplan financing.  *See* Dkt. No. 2 at ¶¶ 126-37.  Defendant contends that this claim is subject to dismissal because it had no

obligation under the Dealer Agreement to entertain the transfer proposal or to obtain financing for Plaintiff.  *See* Dkt. No. 28-1 at 19-23.

"To state a claim for breach of contract under New York law, 'the complaint must allege: [(1)] the formation of a contract between the parties; [(2)] performance by the plaintiff; [(3)] failure of defendant to perform; and [(4)] damages.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotation omitted).  "Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide'" and where the contract is unambiguous, a court is "'required to give effect to the contract as written.'"  *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citations omitted).  "In reviewing a motion to dismiss for a breach of contract claim pursuant to Rule 12(b)(6), the Court may interpret a contract properly before it and should 'strive to resolve any contractual ambiguities in [the non-moving party's] favor.'"  *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13-CV-7169, 2014 WL 3639176, *3 (S.D.N.Y. July 22, 2014) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  "However, the court is 'not constrained to accept the allegations of the [pleading] in respect [to] the construction of the contract.'"  *Id.* (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72).

In the present matter, Plaintiff has failed to plead both that it performed under the contract and that Defendant failed to perform.  First, Plaintiff asserts that Defendant failed to perform by failing to consider the proposed transfer.  Plaintiff asserts that Defendant's letter on April 8, 2021, demonstrates that Defendant did not even consider the proposed transfer.  *See* Dkt. No. 2 at ¶ 131.

Defendant has provided the Court with the April 8, 2021 letter.  Dkt. No. 28-8.  The letter

demonstrates that Plaintiff's breach of contract claim must be dismissed.[4]

While the letter rejects that Defendant had a duty to consider the proposed sale, the letter

details exactly why Defendant is rejecting the sale.  *See id*. at 2-3.  Specifically, Defendant

notified Plaintiff that the proposed transfer would be in violation of both the "Financial

Requirements for General Motors Dealers" and the "Minimum Equity Investment" provisions of

the Section III.A.1 of GM bulletin 15-04.  *Id*. at 2.  Additionally, Defendant noted that the

proposed transfer would not even be finalized until months after the termination date.  *Id*.  Finally,

Defendant noted that it did not feel that Ms. Hammond would be an appropriate owner in light of

the fact that Plaintiff's sales numbers since she joined Plaintiff's dealership had been among the

worst in the State of New York.  *Id*.  Plaintiff does not claim that Defendant's assertions are

incorrect, only that Defendant is not "permitted to tout [Plaintiff's] unreasonable sales

performance standard as a reason for denying the transfer."  Dkt. No. 29 at 15.  Courts, however,

have found that consideration of such factors is appropriate in deciding whether to permit the

transfer of a dealership to a prospective buyer.  *See, e.g.*, *H.B. Automotive Grp., Inc. v. Kia*

*Motors Am.*, No. 13-cv-444, 2016 WL 4446333, *5 (S.D.N.Y. Aug. 22, 2016) (holding that the

defendant reasonably relied on the proposed purchasers below satisfactory customer satisfaction

scores in refusing to permit the transfer of the dealership).

---

[4] Because Plaintiff also claims that Defendant's decision was unreasonable—the actual
requirement under the Dealer Act—the Complaint as to these claims survives review at this stage.

Second, as Defendant notes, Plaintiff has failed to plead that it has performed under the contract.[5]  Dkt. No. 28-1 at 16-17.  Plaintiff asserts that "[i]t is unnecessary for each element of a breach of contract claim to be pled individually."  Dkt. No. 29 at 16 (quoting *Fort Prods., Inc v. Men's Med. Clinic, LLC*, No. 15-CV-00376, 2016 WL 797577, *3 (S.D.N.Y. Feb. 23, 2016); *Smith Cairns Subaru*, 41 Misc.3d 1222(A)).  However, Plaintiff's characterizations of the case law are wholly inaccurate.

In *Fort Prods.*, the court specifically stated that the plaintiff had pled that he had performed under the contract and took up no further analysis regarding this term.  *Fort Prods*, 2016 WL 797577, at *3.  Second, *Smith Cairns Subaru* is a state court decision not bound by the pleading standards of the Federal Rules of Civil Procedure.  *Smith Cairns Subaru*, 41 Misc.3d 1222(A), at *12.

Here, the Complaint affirmatively recognizes that Plaintiff materially breached the Agreement three times.  Plaintiff cannot state a claim for breach of contract.  *Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 68 (S.D.N.Y. 1990) ("Moreover, where a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation"); *see also Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12-CV-6255, 2013 WL 4860585, *7 (S.D.N.Y. Sept. 12, 2013) ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the

---

[5] While the Parties' Agreement is not dispositive at this time for Plaintiff's claims for violations of the Dealer Act, "[t]he statute does not modify or displace the state common law principle that a party commits a material breach of its contract with another party when it violates a provision going to the root of their agreement."  *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, No. 13-cv-520, 2013 WL 1968371, *3 (E.D.N.Y. May 10, 2013).

bargain or, synonymously, where that party has committed a material breach") (citation omitted). Plaintiff has therefore failed to plead a plausible breach of contract claim because the Complaint makes clear that Plaintiff did not perform on the contract; rather, Plaintiff materially breached the contract well before Defendant's alleged breach.

Thus, as Plaintiff has failed to sufficiently plead that Defendant did not consider the agreement and that it had performed under the contract, Defendant's motion to dismiss Plaintiff breach of contract claims is granted.[6]

## E.   Implied Covenant of Good Faith and Fair Dealing

Plaintiff claims that Defendant did not exercise good faith with regard to considering Plaintiff's request to have floorplan financing through GM Financial.  Dkt. No. 2 at ¶¶ 129, 134.

### 1. Duplicative Claims

"Under New York law, all contracts contain an implied covenant of good faith and fair dealing." *Perks v. TD Bank, N.A*., 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) (citing *Fishoff v. Coty Inc*., 634 F.3d 647, 653 (2d Cir. 2011)).  "Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done

---

[6] Although unclear, to the extent that Plaintiff claims that Defendant breached the Agreement by not requiring GM Financial to offer it floorplan financing, Plaintiff has failed to allege that there was any contractual agreement requiring that Defendant do so.  Rather, the Agreement states that the obligation to obtain floorplan financing was within Plaintiff's control and its failure to maintain this financing was a material breach.  Dkt. No. 28-4 at 13, 18-19.  Thus, to any extent Plaintiff claims breach of contract for Defendant not requiring GM Financial to offer it floorplan financing, such claims are similarly dismissed.  *See Chic Miller's Chevrolet, Inc. v. General Motors Corp.*, 352 F. Supp. 2d 251, 256-57 (D. Conn. 2005) (dismissing the plaintiff's breach of contract claim relating to obtaining floorplan financing where the sales and service agreement placed the responsibility on the dealer to obtain financing and other general obligations in the contract generally requiring the manufacturer "to assist Dealer in its business planning" did not negate the specific contractual obligation of the dealer to have and maintain floorplan financing).

so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 198 (2008) (internal citation omitted). However, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Perks*, 444 F. Supp. 3d at 641 (internal quotation and citation omitted); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled") (internal quotation, alterations, and citation omitted). "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative[.]" *Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc.*, No. 05-CV-8510, 2007 WL 438088, *7 (S.D.N.Y. Feb. 8, 2007).

To the extent that Plaintiff claims breach of the covenant of good faith and fair dealing for Defendant's alleged failure to consider and its unreasonable refusal to approve the proposed sale of the franchise, those claims are based on the same allegations as Plaintiff's breach of contract claim and are therefore duplicative. Thus, Plaintiff's claims are dismissed.[7]

### 2. Remaining Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

---

[7] It is immaterial that Plaintiff's breach of contract claims is dismissed for failure to state a claim. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 Fed. Appx 575, 583 (2d Cir. 2020) (rejecting the plaintiff's claim "that it was error to dismiss the good-faith-based claim where the breach of contract claim was also dismissed"); *see also Apogee Handcraft, Inc. v. Verragio, Ltd.*, 155 A.D.3d 494, 495 (1st Dep't 2017).

Plaintiff's remaining claim is that "GM did not exercise good faith with regard to considering Maltbie's request to have a floorplan line through GM Financial, causing the default that GM now complains of."  Dkt. No. 2 at ¶ 134.  Plaintiff's remaining claims fail because it has failed to allege "a valid and binding contract from which such a duty would arise."  *Am.-Eur. Art Assocs., Inc. v. Trend Galleries*, Inc., 227 A.D.2d 170, 171 (1st Dep't 1996); *Schorr v. Guardian Life Ins. Co. of Am*., 44 A.D.3d 319, 319 (1st Dep't 2007).

Plaintiff alleges that in 2017, it was declared to be in default with its original floorplan financing provider Ally Financial, formally known as GMAC, Defendant's captive floorplan lender.  Dkt. No. 2 at ¶¶ 62-65.  Plaintiff's rate then rose from three and a half percent to ten percent.  *Id*. at ¶ 65.  In November 2017, Plaintiff applied for financing through GM Financial, but its application was ultimately denied.  *Id.* at ¶¶ 66-67.  As noted, Plaintiff has failed to allege that there was any contractual agreement requiring that Defendant assist Plaintiff in obtaining floorplan financing.  Rather, the Agreement states that the obligation to obtain floorplan financing was within Plaintiff's control and its failure to maintain this financing was a material breach.  Dkt. No. 28-4 at 13, 18-19.  Plaintiff merely claims that Defendant had the power to help Plaintiff and unreasonably chose not to do so.  *Id*. at ¶ 84.

Plaintiff has therefore failed to state a claim for breach of the implied covenant of good faith and fair dealing by failing to claim that Defendant "has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain."  *Bi-Econ. Mkt*., 10 N.Y.3d at 198 (citation omitted).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed.

### IV. CONCLUSION[8]

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's Motion for to Dismiss (Dkt. No. 28) is **GRANTED-in-part and DENIED-in-part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 26, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[8] Following the Court's decision, only Plaintiff's claims against Defendant for violations of New York Vehicle and Traffic Law remain.  Plaintiff's contract law claims are dismissed.